UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

      v.

DEONARINE LOKHNAUTH,

               Defendant.
------------------------------------------------------------X

**MEMORANDUM & ORDER**
19-CR-201 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:** On December 10, 2019, Deonarine Lokhnauth ("Defendant") pled guilty to the lesser included offense of Count One of the Indictment. The Court now sentences him and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is hereby sentenced to six months of incarceration and a $100 mandatory special assessment.

## BACKGROUND

On April 30, 2019, the Government filed a two-count Indictment against Defendant, charging him with: (1) importation of cocaine, in violation of 21 U.S.C. §§ 952(a), 960(a)(1), and 960(b)(2)(B)(ii); and (2) possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B)(ii)(II). Indictment, ECF No. 7. On December 10, 2019, Defendant pled guilty to the lesser included offense of Count One of the Indictment, charging Defendant with a violation of 21 U.S.C. § 952. ECF No. 30; Plea Agreement, ECF No. 31.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

**I.  Legal Standard**

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in

open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing or varying "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

## II. Analysis

### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Defendant was born on November 23, 1983 in Berbice, Guyana to the marital union of Ramdat Lokhnauth and Lalito Narin, both of whom are deceased. Presentence Investigation Report ¶ 28, ECF No. 37 ("PSR"). Defendant's mother committed suicide when Defendant was 7 years of age and his father and second stepmother died in a murder-suicide in 2013. *Id.*

Defendant has been a life-long resident of Guyana. *Id.* ¶ 31. After spending the first year or two of his life in Berbice, his family moved to Georgetown, Guyana. *Id.* Defendant is the eldest of three children to the union of his mother and father, and has one stepsister from his father's relationship with Defendant's first stepmother. *Id.* ¶ 29. Defendant's younger brother, age thirty-three, resides in Queens, New York, works in a warehouse making boxes, is married

with three children, and remains in good health. *Id.* His younger sister resides in East Orange, New Jersey, works as cleaning staff at a hospital, is married with two children, and remains in good health. *Id.* His full siblings are both aware of Defendant's conviction and remain supportive. *Id.* Defendant's stepsister resides in Georgetown, Guyana, and is a single mother with one child. *Id.* Defendant last talked with his stepsister in 2018. *Id.*

Defendant's upbringing has been negatively affected by spells of neglect, suffering, and death. *Id.* ¶ 32. When he was seven years old, his mother self-immolated by fire and died three days later from her injuries. *Id.* Following his mother's death, Defendant described life as hard. *Id.* ¶ 33. His father was always away working; although he provided food, water, and shelter to Defendant and his siblings, he was never physically there for them. *Id.* When Defendant was age eight or nine, Defendant's father introduced Defendant and his siblings to their first stepmother. *Id.* The stepmother was a homemaker, and Defendant and his siblings resided in her apartment. *Id.* ¶ 34. While Defendant's father was away, the stepmother consumed alcohol and cigarettes in the presence of the children and prioritized feeding her children over Defendant and his siblings. *Id.* The stepmother also beat Defendant and his siblings, but not her own children. *Id.* Defendant recalled the stepmother would beat him with a bat when he would wake up in the morning. *Id.* She would hit him in his legs and arms, but not his head. *Id.* When Defendant was fourteen years old, Defendant's father caught the stepmother abusing Defendant and his siblings. *Id.* Following this, Defendant's father purchased two homes, one for the stepmother and her child and one for himself, Defendant, and his siblings. *Id.*

At age seventeen, Defendant was introduced to his second stepmother. *Id.* ¶ 36. Defendant did not endure any physical abuse or hardship, but reported he was neglected. *Id.* Defendant's second stepmother tried arranging a marriage for him to allow her to get closer to

3

Defendant's father. *Id.* However, at age nineteen, when the time came for the arranged marriage, the father disapproved and kicked Defendant and his girlfriend out of the house. *Id.*

After being kicked out of his father's house, Defendant and his girlfriend, Seema Lokhnauth, continued to live together. *Id.* ¶ 38. The couple had two children together before marrying in April 2010 in Guyana. *Id.* The couple had a third child after marriage. *Id.* Defendant reports he "did everything" for the couple's children but his wife did not. *Id.* The couple are currently separated, and Defendant plans to finalize his divorce upon his return to Guyana. *Id.* Defendant fathered one child with his current girlfriend, Ms. Ababee Whyte. *Id.* ¶ 39. Ms. Whyte is aware of Defendant's conviction and remains supportive. *Id.*

Defendant's four children, plus Ms. Whyte's child from a previous relationship, are under the care of Ms. Whyte in Guyana. *Id.* ¶ 40. Defendant's wife does not financially support any of the three children she shares with Defendant and the children are not receiving enough financial assistance at this time. *Id.* Defendant maintains regular contact with his children, but they are not aware of his conviction and have been informed he is currently in the United States for work. *Id.* Defendant stated life will be hard for his children if he receives a sentence of incarceration because Defendant has no familial support in Guyana for the children. *Id.* Ms. Whyte's family is currently supporting the children and Defendant's family in the United States has also been sending monthly gifts of $300.00 throughout the duration of Defendant's criminal proceeding. *Id.*

In 2013, Defendant's father engaged in a murder-suicide with the second stepmother. *Id.* ¶ 37. Defendant's legal standing was affected by his father's death. *Id.* The stepmother's family sued him civilly and Defendant was subjected to a criminal trial. *Id.* He was found not guilty.

4

*Id.* Defendant's life has been threatened, as have the lives of his children, and people have attacked him because his father owed significant debts to many people in Guyana. *Id.*

Defendant is diabetic and suffers from high blood pressure. *Id.* ¶ 43. He also has a condition causing swelling in his neck. *Id.* Outside of case-related stress, Defendant reported no history of mental or emotional health conditions. *Id.* ¶ 45. He denied having any suicidal and violent ideations during his presentence interview. *Id.* Defendant consumes alcohol on a social basis and denied a history of past substance abuse and treatment. *Id.* He completed schooling through "Third Form," which Defendant explained as the American equivalent of high school. *Id.* ¶ 47. Prior to the instant offense, Defendant held jobs in trading and with his father's mechanic shop/container business. *Id.* ¶¶ 50–53.

On April 5, 2019, Defendant arrived at John F. Kennedy International Airport in Queens, New York, aboard a flight from Georgetown, Guyana. *Id.* ¶ 4. Defendant was selected for an enforcement examination by officers with the United States Customs and Border Protection ("CBP"). *Id.* A CBP officer conducted an examination of Defendant's baggage, and the test yielded negative results for contraband. *Id.* A CBP officer then conducted a "pat down" of Defendant, which yielded negative results. *Id.* Defendant had $765.00 of United States currency on his person. *Id.* A CBP officer asked Defendant why he was traveling to the United States, to which Defendant responded he was visiting his sister and brother-in-law and purchasing clothes and merchandise for his Guyanese business DVN Enterprise. *Id.* ¶ 5.

Defendant continued to answer the CBP officer's questions, but the officer was alarmed when Defendant's responses created discrepancies in his story. *Id.* After the questioning, Defendant agreed to an x-ray screening. *Id.* ¶ 6. The CBP officer asked Defendant how many pellets he swallowed, to which Defendant responded "60." *Id.* Defendant and his luggage were

5

transferred to the airport medical facility for an x-ray examination, but Defendant began to pass pellets in a medical facility bathroom. *Id.* Defendant passed twelve pellets on his first bowel movement. *Id.* One of the pellets was recovered and probed, revealing a white powdery substance that tested positive for cocaine. *Id.* Defendant was then arrested and subjected to x-ray screening, which yielded positive results for foreign bodies. *Id.* Defendant passed a total of sixty-nine pellets. *Id.* A lab report prepared by the Drug Enforcement Administration revealed the net weight of the cocaine to be 451 grams. *Id.* Defendant was referred for federal prosecution. *Id.* Following his release from custody, Defendant has been residing at his sister's residence in East Orange, New Jersey. *Id.* ¶ 31.

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's offense and punishes Defendant accordingly. It seeks to deter Defendant from further criminal activity, from disregarding U.S. law, and from engaging in illicit activity.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to a lesser-included offense in Count One of the Indictment charging him with importation of cocaine in violation of 21 U.S.C. § 952. Plea Agreement at 1. Defendant plead guilty to importing a controlled substance into the United States from a place outside thereof, which offense involved a substance containing cocaine in violation of 21 U.S.C. § 952(a). PSR ¶ 1; *see* Plea Agreement at 1.

By statute, Defendant faces a maximum term of imprisonment of twenty years. 21 U.S.C. § 960(b)(3). The statute imposes a minimum term of supervised release of three years, *id.*, but because Defendant meets the criteria set forth in 18 U.S.C. § 3553(f)(1)–(5), the Court shall impose a sentence without regard to any statutory minimum sentence, 18 U.S.C. § 3553(f). Defendant also faces a maximum fine of $1,000,000.00, 21 U.S.C. § 960(b)(3), and a mandatory special assessment of $100.00, 18 U.S.C § 3013. Defendant may be sentenced to a term of probation of not less than one year nor more than five years. *Id.* § 3561(c)(1). One of the following must be imposed as a condition of probation unless extraordinary circumstances exist: a fine, restitution, or community service. *Id.* § 3563(a)(2).

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" *Id.* § 3553(a)(4)(A).

For a violation of 21 U.S.C. § 952(a), the applicable Guideline is section 2D1.1, which determines the base offense level based on the Drug Quantity Table set forth in section 2D1.1(c). United States Sentencing Commission, Guidelines Manual ("USSG") § 2D1.1(a)(5). Defendant is responsible for 451 grams of cocaine, and therefore the base offense level is 22. *Id.* § 2D1.1(c)(9). A two-level "safety-valve" reduction is warranted because Defendant meets the

7

criteria set forth in section 5C1.2(a)(1)–(5). *Id.* § 2D1.1(b)(18); Gov't Sentencing Mem. at 2, ECF No. 44 ("Gov't Mem."). Further, because Defendant was a minimal participant in the offense, the offense level is reduced by four levels. USSG § 3B1.2(a).

Defendant has clearly demonstrated acceptance of responsibility for the offense. Accordingly, the offense level is decreased by two levels. *Id.* § 3E1.1(a). Because the Government was notified in a timely manner of Defendant's intention to enter a plea of guilty, the offense level is decreased by one additional level. *Id.* § 3E1.1(b). This calculation yields a total offense level of 13. All parties agree with this calculation. PSR ¶ 20; Gov't Mem. at 2; Def. Sentencing Mem. at 2, ECF No. 47 ("Def. Mem.").

A total offense level of 13 and a criminal history category of one (I) yields a Guidelines term of imprisonment range of 12 to 18 months. USSG Ch. 5, Part A. Because the applicable Guideline range is in Zone C of the sentencing table, the minimum term may be satisfied by a sentence of imprisonment or, alternatively, a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention, provided at least one-half of the minimum term is satisfied by imprisonment. *Id.* § 5C1.1(d). The Guidelines further recommend a maximum term of supervised release between one and three years, *id.* § 5D1.2(a)(2), and a fine of between $5,500.00 and $1,000,000.00, *id.* § 5E1.2(c)(3). The Guidelines advise Defendant is ineligible for probation. *Id.* § 5B1.1 n.2.

Probation recommends a sentence of 6 months in custody and no period of supervised release. *See* U.S. Probation Dep't Sentence Recommendation at 1, ECF No. 37-1. The Government requests a sentence within the Guidelines range of 12 to 18 months. Gov't Mem. at 2–3. Defense counsel requests a sentence of time served. Def. Mem. at 6.

8

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5). Probation notes the Court may consider a departure under Policy Statement 5K2.0 to account for Defendant's difficult livelihood, which has included a difficult childhood and adulthood rife with death, abuse, and neglect. PSR ¶ 74. That statement allows for a departure from the applicable Guideline if "there exists an aggravating or mitigating circumstance," USSG § 5K2.0(a)(1)(A), such as "a circumstance that the Commission has not identified in the [G]uidelines but that nevertheless is relevant to determining the appropriate sentence," *Id.* § 5K2.0(a)(2)(B).

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). This factor is not relevant to Defendant's sentencing.

## **CONCLUSION**

A sentence of six months of incarceration and a $100 mandatory special assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report, barring any errors contained therein, to the extent they are not inconsistent with this opinion.

**SO ORDERED.**

/s/ WFK
_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: September 30, 2020
       Brooklyn, New York